September 21, 1734 Leonard A. Sacks & Associates v. International Monetary Fund Mr. Spence for the appellant, Mr. Newland for the appellant Good morning Good morning, Your Honor Let me ask you a question. Counsel, have you been tested so you don't have to argue with mass fraud? Unfortunately, Your Honor, I have not. We're visiting a family this weekend, and I was ordered to secure a new disease Good question Thank you We're trying to speak loud, and we'd like to have a helpline I realize it's quite hard without being able to see somebody's mouth Exactly I will do my best May I please report, sir? My name is Donald Spence. I represent the appellant, Leonard A. Sacks & Associates, D.C. This is a case about a contract between a lawyer and his client. On this contract, the I.M.N. waived his immunity from the charge of disputes with his client. It agreed to arbitration to dissolve those disputes and incorporated the American Arbitration Association's rules for judicial review. The only question here is, looking at the plain language of the contract, whether the dispute resolution clause includes judicial review of the arbitration reward. This is a straightforward question for contract implementation. Sacks' position is that the I.M.N. has the permission to do arbitration review, expressly waive immunity for purposes of disqualification review, and incorporate the D.C. law. Both provide judicial review of the reward. The I.M.N. makes three arguments as to why there is no judicial review. First, the I.M.N. agrees that D.C. law applies to arbitration. But it claims that the right to judicial review under the D.C. Code is already part of D.C. law. The Uniform Arbitration Act is not. The contract doesn't say that. It doesn't provide any limitations with regard to the applicability of D.C. law. It simply says in the first part, quote, the article of the case shall be decided according to the law of the district court. Secondly, the I.M.N. argues that while it's agreed that crippling rules apply, and in fact the parties to the D.C. Code are afraid to review, it claims that Crippling Rule 52C does not meet Crippling Rule 52C. In fact, provides that an award can be affirmed by a court, civil, state, or federal court in the jurisdiction. There's nothing in this contract that excludes this rule or any other crippling rule. Not for you to decide the case, but for California partners. The contract is drafted specifically excluding the applicable crippling rule relating to judicial review. The contract in this case is not. But why doesn't it, Mr. Spence, because it has a reservation of immunity. Even in the arbitration clause. So why isn't that, in effect, saying we will arbitrate, but without any assistance, confirmation, enforcement, compulsion, or subpoena efforts and so on? And that's my next argument. And here's why. If you look at the specific language of the arbitration clause, you start at the top of Section 20.1. And it's an observation with regard to the IMF's existence and immunity. It talks about the statutory basis of the IMF and that the IMF has immunity from judicial process. But what it doesn't do, this is an introductory paragraph, what it doesn't do is specifically state that the IMF is not waiving immunity under this particular contract. It's an observation or a declaration. It's not a direct promise. And if you look at the other end of the clause, doesn't it specifically make the point that it doesn't waive this immunity? It does not. That's what I want to say. It's an observation. It's understood and agreed that the submission of plain receipt, in part, should not be used and shall be conserved. The act of… I know it's not a voice test for me as well. I apologize, sir. I mean, it just ought to be one way to do it. I will keep it up. The act of submission or dispute, the act of submitting the claim itself is not a waiver. And that makes sense to me because if I submit a claim, that's sort of the essence of what I'm looking for. I'm going to get a new award. Therefore, the award is. But what they've done is they've taken this very narrow act, submission of a claim, and said that's a waiver. That makes sense. What could it be referring to, if not immunity relating to the arbitration that this subclause contemplates? It's not. It's not addressing the award. It's not addressing the confirmation. It's not addressing the arbitration. My question is why not? It says, submission of a claim or dispute to arbitration shall not be considered to be a waiver of the immunities of the IMF. So if it isn't saying submission to arbitration continues to exclude any and all court involvement, what is it there? What it's saying is do not submit my claim. I'm saying only that. That's not a waiver of immunity. It stops there. All they're talking about is what I submitted. Just because you said it doesn't mean so. So it's guarding against counterclaims. You need to be more specific. I'm not sure what you're talking about. It's saying that until I go to the process, there's no order. Leaving the claim, leaving it in the past. So I have a claim I submitted. That's my submission. There's no waiver. Then we go to the arbitration process. Then an award is issued. There is no waiver. Because there, without the triple A rules, you have to exceed the importance of those rules and an award is issued. Counsel, I'm not sure I agree with your interpretation. But let's assume it was ambiguous. What happens under the law? It's ambiguous. I'm sorry? Ambiguity is going to get dragged. Well, no. What's the general law? It doesn't have to be an explicit waiver of immunity. The explicit waiver of immunity is above the clause. No, no, no, no. This is general. It doesn't have to be an explicit waiver. I agree. It was ambiguous. It was ambiguity, which I don't think it is. But if there was ambiguity, you lose. I don't agree. Why? I think there's another. The ambiguous sentence is actually the sentence for 40 days and not the standard eight days. I'm talking about the whole interpretation. The best you can make it is with the ambiguous. And if it's ambiguous, you lose. Right? It is correct, isn't it? It is correct. If I cannot show that there's been an express waiver, I lose. Well, that's what started it. If it's ambiguous, you would lose. I don't think it goes to the waiver itself. I think it goes to the procedure with regard to the process. No, I don't understand. Well, it's clear from the contract that we don't arbitrate. It's clear from the contract that D.C. law applies. The idea is clear that the arbitral case is governed by D.C. law or decided by D.C. law. What does D.C. law get you in terms of this question about arbitration and enforceability? In terms of the arbitration process, isn't D.C. law granted by the Federal Arbitration Act? D.C. law is something that's subject to contract. No? It means that whether you talk about the Federal Arbitration Act or D.C. law, the result is going to be the same. So that would have the same impact on both states. I'm not going to rely on D.C. law to support your enforceability. My confusion is with each other. Yes, and I am because I'm doing a contract sentence. I have to rely on D.C. law. So that's why I'm doing it. What D.C. law does for you is it provides a review of the process. If you look at the process of confirmation, modification, and vacation of the board, notice that modification of vacation of the board goes to, was the process fair? Was there evidence of partiality? Was there some refusal to consider superior legislation or legislature? And so that's what D.C. law does for you. And what you look at here is the article will also be decided according to the terms and contract of the law of the District of Columbia. You can't just say, okay, well, some of the law applies over here, but I'm going to ignore the D.C. law with regard to the statute over there. That doesn't make sense. You've got to read this thing as a whole. That's what D.C. law requires, that all terms of the contract be given lawful effect, reasonable lawful effect. If you stick with the IMS interpretation, what you're doing is you're reading out Rule 52 of the Circulation Act. You're limiting the D.C. law to reasonable lawful law. You're reading out Rule 52 of the American Arbitration Act. You're reading out pieces of D.C. law by saying that the D.C. Enforced Arbitration Act does apply. And you turn the last sentence in this section into service because there's no reason for it to – there's no reason if you have blank immunity, then why are you putting a clause in your – it's protecting your self-directed submission to claim this. And that's the thing that doesn't make sense. You've got to read this stuff as a whole. The – I mentioned the California Department of Services case earlier. There, the draft of the contract specifically excluded certain purposes that Cripple-A rules require individuals to do. The IMS drafted this contract. They had that sentence. It would be clear to my client – clear to the case to my client up front that the ramifications of an unenforced – of the ramifications of an unenforced arbitration were – SACS didn't get that chance. That language is in Indian. The language in here, the reasonable interpretation is that D.C. law applies, that Cripple-A rules apply, and that that's the proper interpretation. Okay.  Anyone? Thank you.  Good morning. May I please have the floor to Jane Newton from the International Monetary Fund. Before the board, we ask the court to affirm the district court order, because plaintiff has not established that the fund has struck the way that it's absolutely traditionally would be, as required by not only its partners, but – I take it to be your argument that after the arbitration, if the arbitration had voted against you, you would say, no, we're not going to do it. But they haven't. We've got a lot of counsel. We've given a hypothetical. The worst answer you can possibly give is not to do it. So, how do you deal with plaintiff? Yeah. In theory, Your Honor, they're absolutely in the way from every point of judicial process. If you answer my question, you would say, court passed. They couldn't be held in court to enforce the order, for sure, which I think is the answer to your question. They could say it would be insane, but they haven't. Even if we get into these types of policy discussions, whether that's fair or unfair, all of those policy considerations were decided in 1945 and brought to a conclusion, right? The fund negotiated for absolute unity. All of the member countries at that time agreed, policy reasons, that the fund's absolute unity from every point of judicial process was critical to its role in the international community. So, we don't get into these policy discussions with the funders, with General and stuff. Negotiated for absolute unity. Absolute unity. Mr. Newland, how do you square your position where Supreme Court's decision, you know, under priority, where the court said the arbitration has to have a real world objective. It's not designed for recognition in lack of practical consequences. And basically saying arbitration without a waiver of immunity to the extent of reducing it to a judgment is just not arbitration at all. I think two things. First, T&M Enterprises is clearly distinguishable because in that case, the contract itself, right? The contract itself said you can reduce this award in any court without doing anything. That's true, but interestingly, the court really doesn't promise that. You're right, that is a distinction. But, so, if they found a tribal waiver, and then they go to this point about policy determination, about what constitutes an arbitration without a rule, and they say that, I think right at the end of the court they also add that the contract is not an arbitration without a rule. Here again, like any policy, we have so many. Any policy determination without a rule, that's fair or not. We're deciding not in this court to revisit, I suggest. I mean, here, the point of this in general, in particular, is that there must be an express waiver. That the IMF negotiated an absolute waiver. Nobody questions that the default is waiver. And that there are going to be consequences for our community. And that it cannot be indicated in the absence of an express waiver. Really, the question here is there is an express clause providing for arbitration. What are the implications of that? And I take your position to be that the arbitration in this contract is basically a potential aid to voluntary settlement and nothing more. That there is no ability of any counterpart in the IMF to compel arbitration under this law. To be a witness, be a court assistant, be a witness under this law. Or to confirm or enforce an award rendered by the Supreme Court under this law. That's your position. I think that's certainly consistent. Is that your position? It is. So, binding arbitration, in what sense is the reference in the contract to compel arbitration binding? It can't be enforced in a court. It would be ignored. No, I think the point there is exactly reinforcing arbitration. And that is, the arbitration itself is binding. Those are words, by the way, that are in the same arbitration. It's also added to reinforce the point that the arbitration is the added. Well, it's a final version. Binding in what sense? There's no binding in this contract. No, it's binding on the parties. The arbitrary vote, binding on the parties. In this case, that's exactly what the fund did. They had an arbitration. They went through it. They didn't say, we're not going through arbitration. Here, the fund went through arbitration. It received the reward. It was adverse to it. And it attended the payment of Mr. Sachs. That's the end of it. It's finally binding. There isn't a mechanism. When you have absolutely, absolutely your own express waiver, there's no mechanism to revisit whether that's a good policy or not. And I think what the plaintiffs attempt to do, or what Mr. Sachs attempts to do, is argue for a policy exception in that the court should make a policy determination and use that to overturn the clear language of the treaty enshrined in a federal statute and reinforce the contract. I don't really agree to making any of those arguments. I really need to be arguing about what it means to agree to the contract. It means exactly what the contract says. Arbitration at the end. That notwithstanding the submission of arbitration, there's no way for the funds to be used in the judicial process. That's crystal clear. And by the way, it also says in the opening, these are our amenities. They're incorporated into the federal law and D.C. law. And accordingly, this is what we're agreeing to. We're agreeing that we're submitting to arbitration, that the arbitrators themselves will apply D.C. law in the arbitration case. Nothing more, nothing less. There's nothing here. I think Sachs argues that there's a contract. There isn't. If you look at C&L, there is a contract. The contract itself says the contract will be covered by the place of the project. And that is the book. Is the contract at issue here a standard contract? I'm not dealing with other vendors. I'm not saying this is the only one they have. It's a huge organization around the world. But it is a standard contract. For our professional services. You say in one sense of your brief that the IMS executive board would have joined the IMS community. But I didn't see anything other than the affidavit that supported them. In fact, bylaws in their agreement that are referred to don't have any reference to this project. Can you give me a contract where that is supported? Absolutely. If you go back to the articles in the agreement. And I believe it's actually in article 12, section 2. All the numbers that aren't directly granted to one of the organs get granted to the board of governors. Either internally the board of governors has granted that to the executive board. In the brief A of the articles. What? I find that any waiver on judicial immunity is done through the executive board. So, if the arbitrator would corrupt and would want to reach the whole thing. That's something that potentially the attorney general could go after, but not the county police. I don't quite get that. And in this court's case. Sorry, I didn't hear you. I didn't hear the judge's question. Judge Cote's question was if there was some kind of misconduct on the part of the arbitrator. That type of thing. That the counter party could go after. Could come to court and vacate the arbitration board. That's G.O. Jameson. I confirm that. That's the city. The last one is they do talk about Rosebud here. And Rosebud, I think, is not. Rosebud doesn't have any of the express preservation. Not once, but twice. Rosebud also talks about express waiver standards. I don't think it's consistent with the physical view of what it takes for a sovereign. Which, again, has a lower level. Which has absolutely nothing to do with what the standard is for an express waiver. Here what they ask you to do is look at this clause and do what you shouldn't do. Look for clauses and parts that are intentional to each other or suggest a waiver. We don't have any of that. There's no explicit express waiver. In fact, the clause itself preserves the agreement. No time now. Thank you. Just two points. One is, One is, you have to look really hard to see that that's an express protection. Expression of protection. You're right. I do not. An express assertion of the community. It's not. It's an introductory clause. It says, hey, we have a meeting. We're reaching a statute of limitations. That's all it says. And then we'll go to the according and notwithstanding anything that the contrary has proven. It is expressly agreed and understood. And there it follows. Wait. There it follows. There it follows. The, uh, the, uh, the law. We wrote, um, Rosebud. There's, we wrote that Rosebud does this. And it applies in this case. Um, because it shows that it's important that this court be considered. Under these circumstances. Finally, see a letter of advice. That case applies. The distinction about the body. Well. That. That's. Then that. Forms a specific. Person. Identical reference. Is it?  The same. Yeah. Thank you. Thank you. Thank you.
judges: Henderson, Pillard, Silberman